

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 1:09-cv-437 |
| J. BRYAN WILLIAMS, | ) |
| Defendants. | ) |

## Memorandum Opinion

### I. Background

In this case, the Government seeks to enforce its assessment of two "Report of Foreign Bank and Financial Accounts" ("FBAR") penalties against Defendant J. Bryan Williams for willfully failing to report his interest in two Swiss bank accounts for the tax year 2000 as required by 31 U.S.C. § 5314. Based on the findings of fact and conclusions of law that follow, the Court concludes that the Government falls short of meeting its burden in establishing that Williams willfully failed to disclose assets in a foreign account in violation of 31 U.S.C. § 5314.

### II. Procedural Posture

The Government instituted this action by filing its Complaint (Dkt. No. 1) on April 23, 2009. Williams filed his Answer (Dkt. No. 6) on July 10, 2009. After discovery, the Government moved for summary judgment (Dkt. No. 11) on January 6, 2010. By an Order dated March 19, 2010 (Dkt. No. 37), the Court denied the Government's Motion for Summary Judgment, finding that genuine disputes of material facts remained.

The Court held a bench trial on April 26, 2010. In lieu of closing arguments, the Court permitted the parties to file simultaneous post-trial briefs and responses thereto. The parties' briefs have now been received and this matter is ripe for disposition.

### III. Jurisdiction

Title 28, § 1345 of the United States Code provides subject matter jurisdiction over this case, as this is a suit "commenced by the United States." Further, the Government states that it has commenced this action at the request of and with the authorization of the Chief Counsel for the IRS and at the direction of the Attorney General, pursuant to 26 U.S.C. § 7401, which states that "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced."[1]

### IV. Legal Standard

The statute at issue, 31 U.S.C. § 5321(b)(1), permits the Secretary of Treasury to "commence a civil action to recover a civil penalty assessed under subsection (a) . . . ." However, the statute does not indicate the legal standard to be applied by courts in such an action. The Court is aware of no other court which has addressed this issue.

Both parties cite *Eren v. Commissioner*, 180 F.3d 594 (4th Cir. 1999) a Fourth Circuit case which discusses the legal standard applicable in a trial before the U.S. Tax Court, for the proposition that the Court's review is "*de novo*, and the general rule is that it is a decision based on the merits of the case and not on any record developed at the administrative level." *Id.* at 597-598.

---

[1] In turn, 31 U.S.C. §7402 provides that "district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and…render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."

2

The Court agrees that a *de novo* standard is appropriate here. Though *Eren* is not wholly on point, the Court looks to the rationale in providing *de novo* review in a trial before the tax court as instructive in this case. Further, in enforcement actions brought by the Government in other contexts, *e.g.*, *U.S. S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 239 (4th Cir. 2009) (§ 10(b) enforcement action under the Securities Exchange Act of 1934); *Hi-Tech Pharm., Inc. v. Crawford*, 544 F.3d 1187, 1191 (11th Cir. 2008) (enforcement actions brought under the Federal Food, Drug, and Cosmetic Act); *Reich v. Local 89*, 36 F.3d 1470, 1474 (9th Cir. 1994) (Labor-Management Reporting and Disclosure Act of 1959), the Government is required to prove its case by a preponderance of the evidence on the record established at trial. The Court is also persuaded that a *de novo* standard is appropriate given that 31 U.S.C. § 5321 provides for no adjudicatory hearing before an FBAR penalty is assessed. *See United States. v. Healy Tibbitts Const. Co.*, 713 F.2d 1469, 1475 (9th Cir. 1983) ("where, as here, the statute *contemplates a full adjudicatory hearing before the agency*, a court trial *de novo* is inappropriate" (emphasis added)); *United States v. Indep. Bulk Transp., Inc.*, 394 F.Supp. 1319 (S.D.N.Y.1975) (same).

## V.     Findings of Fact Not in Dispute

The following are findings of fact which are not in dispute among the parties and which were established by the evidence submitted at trial:

1. In 1993, Defendant Williams opened two bank accounts at Credit Agricole Indosuez, SA, in the name of ALQI Holdings, Ltd., a British Corporation. Def. Ex. 20.

2. Between 1993 and 2000 Williams deposited more than $7,000,000 in assets in the accounts, earning more than $800,000 in income over that period.

3. Schedule B, Part III of Williams' 2000 income tax return instructed Williams to indicate whether he had an interest in financial accounts in a foreign country by checking "Yes" or "No" in the appropriate box and directed him to Form TCF 90-22.1.

4. On Williams 2000 tax return the box was checked "No."

5. The deadline for filing a TDF 90-22.1 form for the tax year 2000 was June 30, 2001.

3

6. Williams did not file a TDF 90-22.1 form by June 30, 2001.

7. Williams' tax attorneys and accountants advised him to make a series of complete disclosures to Swiss and U.S. authorities. Tr. at 73; 77-78.

8. In January 2002, Williams disclosed the ALQI accounts to John Manton of the IRS in Washington, D.C. Tr. at 76.

9. On October 15, 2002, Williams disclosed the accounts by filing his income tax return for the tax year 2001. Tr. at 72; Def. Ex. 5.

10. Williams made full disclosure of the ALQI accounts on February 14, 2003, as part of his application to participate in the Offshore Voluntary Compliance Initiative. Tr. at 74-76; Def. Ex. 5.

11. In February 2003, Williams filed Amended Returns for 1999 and 2000 which disclosed details about his ALQI accounts.

12. Thereafter in May 2003, Williams agreed to plead guilty to tax fraud again fully disclosing all information about the ALQI Swiss bank accounts. Tr. at 78.

13. On June 12, 2003, Williams pleaded guilty to one count of conspiracy to defraud the United States and to one count of criminal tax evasion in connection with funds held in the Swiss bank accounts during the years 1993 through 2000. *Id.*

14. On January 18, 2007, Williams filed the TDF 90-22.1 form for all years going back to 1993, including tax year 2000.

## VI. Findings of Fact In Dispute

At trial, there were several significant facts in dispute, most significantly being when Williams first met with the Swiss authorities and when the ALQI accounts were frozen. The Government pointed to testimony given by Williams in a related case before the U.S. Tax Court wherein Williams stated the accounts were frozen in 2001 instead of 2000. However, as Defendant notes, the IRS had already stipulated in the Tax Court case that the Swiss account was frozen on November 14, 2000 at the behest of the U.S. Government, a fact that was thereafter confirmed by the IRS Appeals Office. Tr. at 93; Def. Ex. 29. Defendant also asserted that November 14, 2000 is the proper date in its Opposition to the Government's Motion for Summary Judgment. The Government made no attempt to correct the date in its Reply Brief,

4

though the issue became apparent during oral argument on the Motion, and the Court noted that dispute in its March 19, 2010 Order denying the Government's Motion for Summary Judgment.

During his testimony at this trial, Williams adamantly maintained that November 14, 2000 was the actual date the account was frozen, and insisted that he misspoke during his Tax Court testimony, explaining that the date was a collateral issue during the Tax Court proceedings that he had not focused on in preparing for the case. For its part, the Government attempted to disavow its stipulation in the Tax Court by claiming that the stipulation was made in a different jurisdiction by a different set of Government lawyers. Tr. at 43. Upon giving full consideration to all of the evidence, the Court is persuaded by Williams testimony and as such makes the following findings as to facts which were in dispute:

1. In the summer of 2000, Swiss authorities requested a meeting with Williams to interview him with respect to the ALQI accounts. Tr. at 38.

2. Williams subsequently retained Swiss and US attorneys. Tr. at 44.

3. On November 13, 2000, Williams met with Swiss authorities about the ALQI accounts. Tr. at 44.

4. Swiss authorities, acting at the request of the U.S. Government, thereafter froze Williams' ALQI accounts on November 14, 2000. Tr. at 37-38, 93; Def. Ex. 24.

5. Given their November 13, 2000 meeting with Williams and the November 14, 2000 seizure of his assets in the ALQI accounts, Swiss and U.S. authorities were aware of these assets. *Id.*

6. In June of 2001, Williams retained tax attorneys to advise him with respect to his interests at Credit Agricole Indosuez.

7. Despite hiring tax lawyers and accountants, Williams had never been advised of the existence of the TDF 90-22.1 form prior to June 30, 2001, nor had he ever filed the form in previous years with the Department of Treasury. Tr. at 79.

### VII. Discussion[2]

Title 31, § 5314 of the U.S. Code requires qualifying individuals to disclose their interests in foreign bank accounts. Section 5314(b) allows the Secretary of Treasury to delegate

---
[2] Additional findings of fact appear throughout the Court's conclusions of law as needed.

its authority for enforcement of the section and to prescribe the methods for doing so. The Department of Treasury did so in promulgating the disclosure requirements at issue here, including the requirement to file the TDF 90-22.1 form. *See* 31 C.F.R. § 103.24-27.

Pursuant to the applicable regulation, an individual is required to file Form TDF 90-22.1 if: (1) the individual was a resident or a person doing business in the United States; (2) the individual had a financial account or accounts that exceeded $10,000 during the calendar year; (3) the financial account was in a foreign country; and (4) the U.S. person had a financial interest in the account or signatory or other authority over the foreign financial account. *See* 31 C.F.R. § 103.24; 103.27. Williams does not dispute that he meets the first three of these requirements.[3]

Civil penalties for willful violations of § 5314 are provided in 31 U.S.C. § 5321(a)(5)(B),[4] which allowed for a maximum assessment of $100,000. Section 5321(b)(1) authorizes the Secretary of Treasury to assess these penalties; the Secretary delegated that authority to the IRS in 31 CFR § 103.56(g).

Thus, the crux of this case is whether Williams "willfully" violated any portion of § 5314.

### V. "Willful Violations"

While "'willfully' is a word of many meanings whose construction is often dependent on the context in which it appears," the Supreme Court has clarified that "[w]here willfulness is a statutory condition of civil liability, it is generally taken to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)

---

[3] Williams does dispute whether he had "signatory or other authority" over the account due to its freezing by Swiss authorities, but the issue is rendered moot by the Court's conclusions in the remainder of this Opinion.

[4] As that statute existed prior to amendment in 2004. Willful violations are now addressed in 31 U.S.C. § 5321(a)(5)(C), which provides a different calculation of the maximum available penalty. As discussed in greater detail *infra*, the statute was also amended to expand the scope of the statute to acts falling below the willfulness standard, but those provisions were not in effect for the tax year 2000.

(citations and internal quotations omitted). Importantly, "a single, or even a few, inadvertent errors would not amount to a 'willful' violation. At some point, however, a repeated failure to comply with known regulations can move a [defendant's] conduct from inadvertent neglect into reckless or deliberate disregard (and thus willfulness). . . ." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009) (citing *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006) (internal citations omitted).

In this case, the Government has failed to prove a "willful" violation. The Court finds that the Government's case does not adequately account for the difference between failing and *willfully* failing to disclose an interest in a foreign bank account.[5] Further, the Government fails to differentiate tax evasion from failing to check the box admitting the existence of a foreign bank account.

### ii. Whether Williams Willfully Violated § 5314

Form 1040, Schedule B, Part III instructs a taxpayer to report an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box on Form 1040. Specifically, Schedule B, Part III, Question 7a of Williams' Form 1040 reads:

> At any time during 2000, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions for exceptions and filing requirements for Form TDF 90.22.1.

Def. Ex. 3. It is undisputed that "No" is checked in the box adjoining Question 7a on Williams' Form 1040. *Id.*

---

[5] It is worth noting that Congress has since amended 31 U.S.C. § 5321 to allow the government to assess a civil penalty for FBAR violations regardless of whether the violation is willful. *See* 31 U.S.C. § 5321(a)(5), as amended by P.L. 108-357. Further, the statute now provides a "reasonable cause" exception. *See* 31 U.S.C. § 5321(a)(5)(B)(ii). While the issue of Williams' liability under the statute as amended is not before the Court, the Court notes that Congress found it necessary to expand the coverage of § 5321 to address a class of conduct falling short of the "willful" standard solely accounted for under the old statute. Clearly, simply failing to file a Form TDF 90.22.1 was insufficient to subject an individual to liability for a civil penalty under the old statute.

7

The Government argues that Williams' signature on his Form 1040 is *prima facie* evidence that Williams knew the contents of his tax return. *See U.S. v. Dehlinger*, 368 Fed.Appx. 439, 447, 2010 WL 750083 at *7 (4th Cir. March 5, 2010) (citing *United States v. Mohney*, 949 F.2d 1397 (6th Cir. 1991)). However, "[a] taxpayer's signature on a return does not in itself prove his knowledge of the contents, but knowledge may be inferred from the signature along with the surrounding facts and circumstances . . . ." *Mohney*, 949 F.2d at 1407.

In this case, upon examination of the surrounding facts and circumstances presented at trial, the Court is not persuaded that Williams was lying about his ignorance to the contents of the Form 1040.

As mentioned, there is no dispute that Williams checked the "No" box indicating that he had no foreign bank accounts and that he failed to submit the requisite TDF 90-22.1 form by June 30, 2001 when it was due. However, these actions occurred after Williams found out that the U.S. and Swiss authorities knew about the ALQI accounts. On November 13, 2000, seven months before he failed to check the correct box, Williams met with the Swiss authorities about the ALQI accounts. At the same time, at the request of the U.S., the Swiss authorities froze the assets in the ALQI accounts.[6] In response to these actions, also in 2000, Williams sought the advice of both Swiss and U.S. counsel. The Court finds that given these facts along with the other testimony given at trial, it clearly follows logically that Williams was aware that the authorities knew about the ALQI accounts by the fall of 2000, significantly before June 30, 2001. The fact that Williams had been notified by Swiss authorities that they were aware of the ALQI accounts and the subsequent freezing of his assets in the account strongly indicate to the Court

---

[6] As noted, Williams argues that because the accounts were frozen, it is also debatable whether Williams had "signatory or other authority over" the accounts as required by 31 C.F.R. § 103.24 by June 30, 2001. That question is moot, however, given the remainder of the Court's Opinion.

8

that Williams lacked any motivation to willfully conceal the accounts from authorities after that point.

Further, Williams' subsequent disclosures throughout 2002 and 2003 corroborate his lack of intent. Though made after the June 30, 2001 deadline, Williams' disclosure of the ALQI accounts to John Manton of the IRS in January 2002 indicates to the Court that Williams continued to believe the assets had already been disclosed. That is, it makes little sense for Williams to disclose the ALQI accounts merely six months after the deadline he supposedly willfully violated. Had the authorities only become aware of the accounts in the intervening six months, Williams' disclosures to Manton may have been viewed in a different light. However, given that Williams believed authorities had been on notice of the accounts since well before the June 30, 2001 deadline, Williams' disclosures to Manton indicate that Williams was not in a mindset to conceal the accounts just six months prior.

The same can be said of Williams' disclosure of the ALQI accounts via his filing of a 2001 tax return. This disclosure is not consistent with a man who knew he had unlawfully concealed his interests in a foreign bank account. Rather, they indicate Williams' consciousness of guilt for evading income taxes, which he never equated with a foreign banking disclosure violation. Similarly, though Williams' February 14, 2003 disclosure in the course of his application to participate in the Offshore Voluntary Compliance Initiative was likely motivated by the possibility of attaining amnesty, the 2003 disclosure is also consistent with an individual who had already been caught avoiding income taxes and was no longer seeking to conceal his assets or income.

The Government argues that Williams' guilty plea should estop him from arguing that he did not willfully violate § 5314 for the tax year 2000. However, the evidence introduced at trial

established that the scope of the facts established by Williams' 2003 guilty plea are not as broad as the Government suggests, and there remains a factual incongruence between those facts necessary to his guilty plea to tax evasion and those establishing a willful violation of § 5314. That Williams intentionally failed to report income in an effort to evade income taxes is a separate matter from whether Williams specifically failed to comply with disclosure requirements contained in § 5314 applicable to the ALQI accounts for the year 2000. As Williams put it in his testimony at trial, "I was prosecuted for failing to disclose income. To the best of my knowledge I wasn't prosecuted for failing to check that box." Tr. at 34.

After reviewing the evidence presented at trial, the Court concludes that Williams' testimony that he only focused on the numerical calculations on the Form 1040 and otherwise relied on his accountants to fill out the remainder of the Form is credible, and should be given more weight than the mere fact that Williams checked the "No" box. In sum, the Court finds that Williams' failure to disclose already-frozen assets in a foreign account was not an act undertaken intentionally or in deliberate disregard for the law, but instead constituted an understandable omission given the context in which it occurred. The Government has failed to meet its burden to establish by a preponderance of the evidence that Williams willfully violated § 5314.

## VIII. Conclusion

For the foregoing reasons, the Court concludes that the Government failed to meet its burden in establishing Williams' liability under 31 U.S.C. 5321(b). Judgment is hereby entered in favor of Defendant J. Bryan Williams.

An appropriate order shall issue.

/s/
Liam O'Grady
United States District Judge

Alexandria, Virginia
September 1, 2010